COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                       NO.
 2-09-425-CR

 

 

DEMETRIUS DEREK INGRAM,
JR.                                           APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

         FROM
COUNTY CRIMINAL COURT NO. 1 OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. 
Introduction

Appellant
Demetrius Derek Ingram, Jr. appeals his conviction for violation of a
protective order.[2]  He contends in one point that the evidence is
legally and factually insufficient to support the jury=s
verdict.  We affirm.

 








II. 
Background

On July
24, 2008, a Denton County district court entered a two-year protective order
against Appellant.  In the protective
order, the trial court found that family violence had occurred and would likely
occur in the future.  Among other things,
the protective order prohibited Appellant from Agoing
within 200 yards of the residence of Ashley Danette David and Ashley Danette
David on behalf of Ka=mya Desiree David.@  Appellant appeared in person for the hearing
and signed the protective order, approving its form and content.  

Ashley
David testified that she and Appellant previously dated, that Ka=mya is
her daughter, and that Appellant is Ka=mya=s
father.  Ashley testified that Ka=mya
lived with Bridgette David, Ka=mya=s
grandmother, in May 2009. Ashley said that she lived with her friend, Brenda
Neal, at the time.  Ashley testified that
Ka=mya is a
protected person under the protective order, that Ka=mya=s
permanent address in May 2009 was Bridgette=s house,
and that Ka=mya=s
permanent address did not change, even if Ashley=s did. 








Bridgette
testified that Ka=mya had lived with her since
birth.  She said that when she arrived
home on May 9, 2009, there was a note on her door that stated: AThis
[Appellant].  I came by to see Ka=mya.@[3]  Bridgette testified that about forty-five
minutes after she discovered the note, Appellant knocked on her front
door.  Bridgette called 9-1-1 and spoke with
the responding officer shortly thereafter. 
Bridgette testified that Appellant was within 200 yards of Ka=mya=s
residence when he knocked on her door. 

Bridgette
also testified that she had recently developed a good relationship with
Appellant.  She said that Appellant had
visited Ka=mya at her house after May 9,
2009, and that she and Appellant had come to an agreement that he should be allowed
to see his child.  She testified that she
called the police on May 9, 2009, however, because she had not yet developed a
relationship with Appellant.  Bridgette
also testified that she first learned of the permanent protective order on May
9, 2009, and that she now understands that she cannot waive or voluntarily
disobey parts of the protective order. 

Officer
Eric Beckwith, the officer who responded to Bridgette=s 9-1-1 call,
testified that Ka=mya was at Bridgette=s house
when he spoke with Bridgette on May 9, 2009. 
Officer Beckwith agreed that Bridgette=s
address is not listed on the protective order and that he could not say how
Appellant would know what the protected addresses are if the order lists them
as confidential and Ashley resides in several places.  However, he also testified that Ashley=s
address is irrelevant because Ka=mya=s
address did not change and because she is a protected person under the order. 








Appellant
pleaded not guilty to violating the protective order at his trial in November
2009.  The jury found him guilty of
violating the protective order, and the trial court sentenced Appellant to 270
days=
confinement.  This appeal followed.

III. 
Standards of Review

In
reviewing the legal sufficiency of the evidence to support a conviction, we
view all of the evidence in the light most favorable to the prosecution in
order to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).








When
reviewing the factual sufficiency of the evidence to support a conviction, we
view all the evidence in a neutral light, favoring neither party.  Steadman v. State, 280 S.W.3d 242, 246
(Tex. Crim. App. 2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim.
App. 2006).  We then ask whether the
evidence supporting the conviction, although legally sufficient, is
nevertheless so weak that the factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
factfinder=s determination is manifestly
unjust.  Steadman, 280 S.W.3d at
246; Watson, 204 S.W.3d at 414B15, 417.  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, although legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.  

Unless
we conclude that it is necessary to correct manifest injustice, we must give
due deference to the factfinder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Johnson v. State, 23 S.W.3d 1, 9 (Tex.
Crim. App. 2000); see Steadman, 280 S.W.3d at 246.  Evidence is always factually sufficient when
it preponderates in favor of the conviction. 
Steadman, 280 S.W.3d at 247; see Watson, 204 S.W.3d at
417.  

IV. 
Analysis

Appellant
contends that the evidence is legally and factually insufficient to support the
jury=s guilty
verdict. 

A.  The Evidence is Legally Sufficient

A person
commits the offense of violation of a protective order if he knowingly or
intentionally Agoes to or near@ a
residence where a child resides if that child is protected by a protective
order.  Tex. Penal Code Ann. ' 25.07(a)(3)(B).   








Here,
Appellant signed the protective order, approving its form and content, and
Ashley and Bridgette testified that Ka=mya, a
protected person under the order, resided with Bridgette.  The jury heard testimony that on May 9, 2009,
Appellant went within 200 yards of Bridgette=s house,
left a note, and later knocked on Bridgette=s front
door.  The note states, AThis
[Appellant].  I came by to see Ka=mya.@  This evidence is legally sufficient to
support the jury=s finding that Appellant
intentionally or knowingly went to or near a residence where Ka=mya
resided.  See id.; Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  We overrule the portion of Appellant=s first
point that challenges the legal sufficiency of the evidence.

B.  The Evidence is Factually Sufficient








Reviewing
all the evidence in a neutral light, we recall that the jury heard testimony
that Ashley resided in as many as three different places, that Ka=mya=s
address was designated as confidential in the protective order, that Bridgette=s
address was not specifically listed in the protective order, and that Bridgette
had allowed Appellant to visit Ka=mya at
her house.  However, the jury also heard
evidence that Appellant was aware of the protective order because he signed it,
that Appellant went to Bridgette=s house
on May 9, 2009, that Ashley=s
resident address is irrelevant because Ka=mya is a
protected person under the order, that Ka=mya=s
address did not change, and that Bridgette did not previously know that she
could not allow Appellant to visit Ka=mya with
the protective order in place. 

Viewing
the evidence in a neutral light, we conclude that the jury could have found
beyond a reasonable doubt that Appellant intentionally or knowingly went to or
near a residence where Ka=mya resided.  See Tex. Penal Code Ann. '
25.07(a)(3)(B).  We cannot say that the
evidence is so weak that the jury=s
determination is clearly wrong or manifestly unjust or that the conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
jury=s
determination is manifestly unjust.  See
Lancon v. State, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); Watson,
204 S.W.3d at 414B15, 417.  We therefore hold that the evidence is factually
sufficient to support the jury=s
verdict.  We overrule the remainder of
Appellant=s sole point.

V. 
Conclusion

Having
overruled Appellant=s sole point, we affirm the
trial court=s judgment.  

 

 

ANNE GARDNER

JUSTICE

 

PANEL: GARDNER, WALKER, and MEIER, JJ,

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  August 31, 2010











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code Ann. ' 25.07(a)(3)(B) (Vernon
Supp. 2009).





[3]Ashley testified that the
note is in Appellant=s handwriting.